Curia, per Johnson, Ch.
The court concur with the circuit court, in the rejection of Alexander Black’s evidence in the cause. As the executor of Shaw, and a party to the suit, he was an incompetent witness, and that, whether he is a bankrupt or not. This rule is too familiar to require illustration. As to his having renounced the executorship, that is out of the question. He states, in his answer, that he renounced before, and was discharged by, the Ordinary. Neither the Ordinary nor any other tribunal, has any such power. The courts of equity do exercise the power of taking the assets out of the hands of an executor, where they are in danger of being wasted, but it has no authority to discharge him from liabilities incurred, or to deprive him of rights which he has acquired, in the discharge of the duties of executor.
I think also, that he was incompetent, because his wife’s interest is directly involved in the suit* and he is called on to testify in her behalf, or rather, in behalf of her interest. The interest of Mrs. Black, in the subject matter of the suit, is independent of her husband, and not under his control, and this, it is said, removes all interest which he might otherwise have had in the matter.
In contemplation of law, the husband and wife are one and the same, and whilst they live together in harmony* *436 their interests are, in truth and in fact, identical. The wife could not sit at the table, and refuse to share with her husband the loaf which she had purchased with her separate funds. I say, could not, but suppose she did, (and the world of mankind is made of a strange compound) and selfishly appropriate the whole of her separate property to her undivided use — it would relieve him, to that extent, from the necessity of providing for her wants. By the policy of the law, husband and wife are excluded from being witnesses for or against each other, in civil, as well as in criminal, cases. In that relation, each is entitled to the unlimited confidence of the other. Withholding it., is well calculated to mar their happiness, and confidence must be destroyed, if an inquisitorial power was established to extort from either the bosom secrets of the other. Intimate as the union between husband and wife is supposed to be in law, and is often in fact, the will of one must prevail over the other, and I can readily suppose that cases might occur, in which it would be felt, even in the solemn act of giving testimony. Would a weak, timid, and submissive wife, feel no restraint when she was called to give evidence for or against a brutal and tyrannical husband 1 Is it not to be feared that her moral sense, however well sustained under other circumstances, would waiver under this influence'? It was wise and humane, therefore, to remove the temptation altogether, by excluding them from being witnesses for or against each other. It is on this principle, that parties are excluded from giving evidence in their own causes, and if husband and wife are unit, and their interests identical, they ought not to be allowed to testify for or against each other.
Lord Coke lays it down as a rule well established in his day, that the husband or wife of a party, is incompetent to give evidence for or against each other, as it might be the means of implacable discord and dissention between them, and of great inconvenience; Co. Lit. 60. And in the application of the rule, it has been held, that in an action by the trustee of a marriage settlement to recover property settled to the separate use of the wife, the husband was an incompetent witness to prove the identity of the property, (and that is exactly this case) And Lord *437 Kenyon remarks, that independently of the question of interest, husbands and wives are not admitted as witnesses for or against each other. From their being so nearly connected, they are supposed to have such a bias on their minds, they are not to be permitted to give evidence. And Buller, J., says, it is now considered as a settled principle of law, that husbands and wives cannot, in any case, be admitted as witnesses for or against each other ; Davis vs. Dunwoody, 4 Term Rep. 678. So in Daker vs. Halsey, 21 Eng. Com. Law Rep. 416, where the widow was called to testify, as to a conversation between her deceased husband and herself, Best, Ch., held that she was incompetent, remarking, that the happiness of the married state requires that the confidence between man and wife should be kept forever inviolate. And so in Munroe vs. Twisleton, reported in the appendix to Peake’s Evidence, 84, Lord AÍvanly held, that a wife divorced from her husband by Act of Parliament, was incompetent to testify as to what he had said during their coverture. So in Terry vs. Bel-cher, 1 Bail. Rep. 27, where the husband and wife lived separately, and were under mutual bonds not to interfere with any property which either had or might acquire, the husband was held an incompetent witness, in a suit brought by the administrator, to recover the property of an estate, of which the wife was entitled to a distributive share, although she was no party to the suit, and that on the ground of interest.
The case of Fitch vs. Hill, 11 Mass. Rep. 286, and Richardson vs. Learned, 10 Pickering, 268, have been relied on as establishing a different rule. In the first, a promissory note had been given to the wife dum sola, and after her marriage, her husband had endorsed it to the plaintiff, and guaranteed the payment. In an action by the endorsee against the maker, the wife was admitted to testify that the maker had paid her the money before her marriage, and that the note was not delivered, on account of its being then lost or mislaid. A verdict was found for the defendant, and upon a motion for a new trial, the court go on to say, that the evidence was admissible according to the rules of law, but that as the husband had been released, the question had ceased to be of importance, *438 and supposing* it inadmissible, it was questionable whether a new trial would be granted. In the latter case, the husband was admitted as a witness in a suit brought by the trustee of the wife, in relation to a separate property in which she had an interest, without the control of her husband, over which she had the uncontroled power of appointment, and the ground relied on is, that the interest of the husband was altogether contingent, and dependant on the wife’s making an appointment in his favor; and the case of Fitch vs. Hill, is referred to as authority.
It would, perhaps, be enough to say of these cases, that they are put on the ground of interest entirely, and not on the general policy of the law, and can hardly be regarded as authority upon it, but the Acts of our Legislature have prescribed the English Common Law as our guide, in all matters where it is not altered by positive enactment, and not inconsistent with our peculiar institutions and customs, and we know of no higher authority for the Common Law, than those before referred to. I have the very highest respect for the decisions of the able men who preside over the courts of our sister States, but we know from our own experience, that a court having once established a rule at variance with the common law, either from inadvertence, or in the confidence that it is injurious, it is followed for the sake of consistency, even after we are satisfied of its fallacy. Besides, that in looking through the decisions of the courts of the different States of the union, we find so many contradictions and qualifications, as to be unable to abstract any settled rule from them, and, without any want of ability or learning in the judges, all are, more or less, influenced by usage and local circumstances, which do not operate to the same extent in England; and where there is a dfi versity of opinions, I should confide more in the judgment of the English court, as to a rule or principle of the Common Law, than in that of any one of the States. Appeal dismissed.
Dunkin and Harper, Chancellors, concurred.
Johnston, Ch., absent from sickness.